UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-81581-Cannon/McCabe

BRUCE PETRICCA,

    Plaintiff,

v.

SAXONY CONDOMINIUM
ASSOCIATION, INC. et al.,

    Defendants.
_____/

**REPORT & RECOMMENDATION**

THIS CAUSE comes before the Court on Defendants' Motion to Dismiss ("Motion") (DE 18), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 23). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART**.

**I.      BACKGROUND**

This is a dispute between condominium residents. The Court accepts the following facts as true, taken from Plaintiff's Verified Complaint (DE 9). Plaintiff lives in a condominium building in Palm Beach County, Florida, governed by the Saxony Condominium Association, Inc. (hereafter the "Condo Association") (DE 9 ¶¶ 10, 12). Defendants Colella, Flanick, and Zassman serve as officers or directors of the Condo Association (DE 9 ¶¶ 7-10).[1] Defendant Hooper owns a unit in the condominium building and is also a member of the Condo Association (DE 9 ¶ 6).

Plaintiff suffers from numerous health conditions that substantially affect his life activities, including morbid obesity, congestive heart failure, severe restricted breathing disorder, and severe

---

[1] According to Defendants, Plaintiff incorrectly named Defendant Alice Zassman, as Alice "Zazzman" (DE 18 at 1, n.1). The Court will use the correct spelling in this Report and Recommendation.

diabetic neuropathy (DE 9 ¶ 4). Plaintiff also identifies as homosexual (DE 9 ¶ 5). The Complaint alleges that Defendants engaged in a variety of behaviors, motivated by discriminatory animus, designed to drive Plaintiff out of the community, including spreading defamation about him, directing hate speech toward him, excluding him from condominium governance, filing false police reports against him, and denying him reasonable accommodations for his disabilities (DE 9 ¶¶ 14-47).

Based on the above, Plaintiff brings the following claims:

| Count | Claim | Defendants |
|---|---|---|
| 1 | Violation of the Federal Fair Housing Act | All Defendants |
| 2 | Defamation Per Se | Hooper, Zassman, Colella, and Condo Association |
| 3 | Defamation | All Defendants |
| 4 | Intentional Infliction of Emotional Distress | All Defendants |

(DE 9).

**II.    STANDARD**

By way of this Motion, Defendants seek dismissal of all four counts pursuant to Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. DISCUSSION

The Complaint alleges four causes of action, each of which the Court will address in turn.

#### A. Count 1 – Federal Fair Housing Act

Count 1 alleges a claim under the Federal Fair Housing Act, 42 U.S.C. § 3601, et. seq. (DE 9 ¶¶ 17-24). The Complaint cites numerous sections of the statute, including 42 U.S.C. § 3604, which makes it unlawful to discriminate against persons in certain housing practices on the basis of "sex" or "disability":

> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
>
> …
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of … sex ….
>
> ….
>
> (f)
>
> …
>
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
>
> (A) that person; or
>
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>
> (C) any person associated with that person.

42 U.S.C. § 3604.[2]

Plaintiff alleges that Defendants violated § 3604 by "engaging in behaviors designed to limit the provision of services and facilities in connection with [Plaintiff's] housing and membership in the [Condo Association] related thereto and designed to drive him out of the community" (DE 9 ¶ 21). Count 1 does not specify the exact discriminatory "behaviors" at issue but instead incorporates all preceding paragraphs of the Complaint, which in turn allege a series of behaviors by the Defendants, including spreading defamation about Plaintiff, directing hate speech toward him, excluding him from condominium governance, filing false police reports against him, and denying him reasonable accommodations for his disabilities (DE 9 ¶ 17).

Defendants argue, and the Court agrees, that Count 1 should be dismissed as an impermissible "shotgun pleading" (DE 18 at 6-8). As the Eleventh Circuit explained in *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015), shotgun pleadings suffer from numerous deficiencies, among them, the improper lumping of different and distinct causes of action into a single, confusing count. Such pleadings fail to give an adversary "adequate notice of the claims against [it] and the grounds upon which each claim rests." *Id.*

Count 1 suffers from a "lumping" problem in several respects:

- Count 1 seems to allege a § 3604(b) claim for sex discrimination *and* a § 3604(f) claim for disability discrimination. These represent separate legal theories of discrimination which should be pled as separate and distinct counts. *See Khan v. Emergency Med. Associates of Tampa Bay*, No. 8:20-CV-1524-T-30TGW, 2020 WL 10354011, at *2 (M.D. Fla. Aug. 24, 2020) ("If Plaintiff intends to pursue claims based on her sex, pregnancy, and religion, she must separate the claims in

---

[2] Sex discrimination includes discrimination based on sexual orientation. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 683 (2020).

4

different counts and specify which facts relate to which count."); *Benoit v. Ocwen Financial Corp., Inc.*, 960 F. Supp. 287, 289-90 (S.D. Fla. 1997) (finding that plaintiff's complaint failed to comply with Fed. R. Civ. P. 10 because it was impossible to determine whether plaintiff was alleging discrimination based upon race or a combination of race and national origin under Title VII).

- Count 1 also cites to § 3604, while the response to this Motion cites to § 3617 (DE 21 at 11). As other courts have noted, § 3604 applies to discrimination in the acquisition of housing, while § 3617 applies to post-acquisition discrimination. *See Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1141-46 (S.D. Fla. 2004) (analyzing the distinctions between claims under § 3604 and § 3617). The current Complaint leaves the Defendants confused as to which type of claim(s) Plaintiff attempts to bring.

- Count 1 also seeks to compel the Condo Association to provide a reasonable accommodation for Plaintiff's disabilities in the form of suitable parking. This represents yet another distinct theory of recovery which must be pleaded as a separate count. *See Hausberg v. Wilkie*, No. 8:20-CV-2300-TPB-JSS, 2021 WL 4133739, at *2 (M.D. Fla. Sept. 10, 2021) ("[C]laims for both disability discrimination (or disparate treatment) and denial of reasonable accommodation … are two different types of discrimination claims."); *Varvaro v. Univ. of Cent. Florida Bd. of Trustees*, No. 6:21-CV-329-PGB-LHP, 2022 WL 9350839, at *4, n.8 (M.D. Fla. Oct. 14, 2022) (noting the complaint was a shotgun pleading in bringing discrimination claims and reasonable accommodation claims in the same count).

For all of these reasons, the Court finds that Count 1 should be dismissed as a shotgun pleading. Given that Plaintiff has not had any previous opportunities to amend, he should be given an opportunity to re-plead the claims(s) in Count 1 by way of an Amended Complaint. The Amended Complaint should comply with the Federal Rules of Civil Procedure and should avoid the problems common to shotgun pleadings. It should separate the causes of action into separately numbered counts, with one legal theory per count. It should give the Defendants notice of the exact statutory provisions of the Federal Fair Housing Act under which each count seeks to travel, and it should identify the facts that support each count (rather than incorporating all previous allegations and leaving the Defendants to guess which facts support which counts). The Amended Complaint should also give each Defendant fair notice of the exact conduct for which Plaintiff seeks to hold each Defendant responsible. Finally, the Amended Complaint should comply with the *Iqbal/Twombly* pleading standards. *See Taylor v. Royal Caribbean Cruises Ltd.*, No. 20-22161-CIV, 2020 WL 3257988, at *1 (S.D. Fla. June 16, 2020) (collecting cases on shotgun pleadings and giving instructions for any future amended pleading).

  **B.**  **Counts 2 & 3 – Defamation Per Se & Defamation**

Counts 2 and 3 allege claims for, respectively, defamation per se and ordinary defamation (DE 9 ¶¶ 25-41, 42-47). Under Florida law, to assert a claim for ordinary defamation, a plaintiff must allege facts that show: "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (quoting *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. 3d DCA 1999)). In contrast to ordinary defamation, a plaintiff in a defamation per se action need not show any special damages, as defamation per se gives rise to

6

"an absolute presumption on both of malice and damage." *Id.* (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)).

In this case, Count 2 alleges defamation per se based on the following statements made by the following Defendants:

> <u>Defendant Hooper</u>:  went door-to-door in buildings C, D, and N and told fellow residents that Plaintiff was a "pedophile," that he was listed on the "sex offender registry," and that he "molests small children" (DE 9 ¶¶ 26-30).
>
> <u>Defendant Zassman</u>:  individually, and in her capacity as a board member, went to members of the community whom she believed might have grandchildren and warned them to keep the children away from Plaintiff because he was a "sex offender" and a "pedophile" (DE 9 ¶¶ 30- 31, 40).
>
> <u>Defendant Colella</u>: individually, and in her capacity as a board member, sent an internet posting on the app "NextDoor" regarding Plaintiff's proposed "Condominium Owners Bill of Rights," claiming that Plaintiff was using the proposed legislation to solicit funds and warning residents "not to fall prey to this scam!" (DE 9 ¶¶ 34, 40).

Count 3 alleges a claim for ordinary defamation based on all of the above statements as well as the following additional statement by Defendant Flanick:

> <u>Defendant Flanick</u>: filed a police report containing numerous false statements about Plaintiff, including that he was not part of the Condo Association and that he had no business contacting residents of the building (DE 9 ¶ 45).

The Court has reviewed the allegations of Counts 2 and 3 and finds them sufficient to survive dismissal.  That is, the Court finds the allegations, when accepted as true, sufficient to state plausible claims for defamation per se (Count 2) and ordinary defamation (Count 3) as to the Defendants named in each respective count.  Defendants raise a number of arguments in support of dismissal, which the Court will address below.

1. **"Scam"**

First, as to Count 2, Defendant Colella argues that her internet post accusing Plaintiff of engaging in a "scam" does not rise to the level of defamation per se under Florida law (DE 18 at 15-17). A written publication (like an internet post) rises to the level of libel per se "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Alan*, 604 F. App'x at 865 (citing *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)). In such actions, consideration should be given only to the "four corners" of the publication. *Ortega Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998). Also, the statement should not be interpreted in the extreme, but "as the 'common mind' would naturally understand it." *Id.* (cleaned up).

Here, Plaintiff alleges that Defendant Colella posted the following message on the internet app "NextDoor":

> People it's holiday time. Do not allow yourselves to be misled by the "proposed" Kings Point Condo Unit Owners Bill Of Rights also known as the "proposed" Saxony Condo Units Owners Bill Of Rights that has been posted on this Next Door App for over one week now. It is unsanctioned. This unsanctioned "proposed" Bill is really just the rants and grievances of just one person here in Kings Point who has been going around here in Kings Point *asking for money* from people here in Kings Point to help "push" this unsanctioned "proposed" Bill through the state hoping to get it to Tallahassee. *Do not fall prey to this scam! Do not pay anyone for this scam!*

(DE 9 ¶ 34) (emphasis added). Plaintiff alleges that, in truth and fact, he never used his proposed legislation to solicit funds or to ask anyone for money, nor did he engage in any "scam" (DE 9 ¶ 35).

The Court finds Plaintiff's allegations sufficient to rise to the level of defamation per se. The internet post accused Plaintiff of soliciting funds under false pretenses and thereby engaging

in a "scam." Defendant Colella warned residents not to "fall prey to this scam" and not to "pay anyone for this scam!" (DE 9 ¶ 34). In the Court's view, an allegation that a person has engaged in a fundraising scam "tends to subject one to hatred, distrust, ridicule, contempt, or disgrace" and "tends to injure one in his trade or profession." *See Alan*, 604 F. App'x at 865 (setting forth the standard for libel per se); *see also Madsen v. Buie*, 454 So. 2d 727, 729-30 (Fla. 1st DCA 1984) ("Under Florida law, a publication is libelous per se when it imputes to another a criminal offense amounting to a felony[.]") (cleaned up); *NITV, L.L.C. v. Baker*, 61 So. 3d 1249, 1254 (Fla. 4th DCA 2011) (affirming defamation per se verdict based upon publication that referred to plaintiff under the title "Law Enforcement Scam Alert").

### 2.     Non-Fact Opinion or Rhetorical Hyperbole

Next, as to Counts 2 and 3, Defendant Colella argues that the use of the word "scam" amounted to mere opinion or rhetorical hyperbole, not actionable as defamation (DE 18 at 18-20). As a general rule, a plaintiff cannot base a defamation claim on opinion, non-literal assertions of fact, or rhetorical hyperbole. *Keller v. Mia. Herald Publ'g Co.*, 778 F.2d 711, 715-16 (11th Cir. 1985) (applying Florida law); *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (noting that "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment"). Courts decide whether a given statement is one of fact, opinion, or rhetorical hyperbole as a matter of law. *Keller*, 778 F.2d at 715.

In support of her argument, Defendant Colella cites to *Akai Custom Guns, LLC v. KKM Precision, Inc.*, No. 20-CV-61469-RS, 2023 WL 8449374 (S.D. Fla. Dec. 6, 2023), a case involving a dispute between a firearms manufacturer (the plaintiff) and its suppliers of firearm parts (the defendants). In that case, the plaintiff, believing that the defendants had supplied

9

defective parts, sent one of the defendants a pre-suit demand letter seeking $1 million to avoid a lawsuit. *Id.* at *3. In response to the demand, one of the defendants posted a Facebook message claiming that the plaintiff, in threatening to bring a lawsuit against the defendants, was "perpetrating a scam." *Id.* at *4.

At the summary judgment stage, the *Akai* court found the Facebook reference to a "scam" did not amount to defamation as a matter of law. *Id.* at *13. Instead, the court found the Facebook post amounted to "non-literal assertions of fact and rhetorical hyperbole." *Id.* In reaching this conclusion, the court noted the practical impossibility of proving or disproving the truth or falsity of an assertion that a given lawsuit threat was a "scam." *Id.* ("Put differently, these statements cannot be the basis for liability in a defamation action because they cannot be provable as false.").

The Court finds the facts alleged here to be different and distinguishable from those adduced at the summary judgment stage in *Akai*. Defendant Colella did not merely express her opinion that Plaintiff's proposed Condominium Owners Bill of Rights was a "scam." Instead, she accused Plaintiff of using the proposed legislation as a pretense to solicit funds from other residents in the community, which practice she described as a "scam." Unlike the defendant in *Akai*, Defendant Colella accused Plaintiff of conduct that can be objectively proven as true or false, because either (1) Plaintiff used his proposed legislation as a pretense to solicit funds from residents in the community, or (2) he did not. The Court therefore rejects Defendant Colella's argument that her statements fall into the category of non-fact opinion or rhetorical hyperbole.

### 3. Publication

Defendants next argue that Counts 2 and 3 should be dismissed in their entirety for failure to allege sufficient facts showing publication to third parties (DE 18 at 20-21). In support, Defendants rely on cases such as *Ward v. Triple Canopy, Inc.*, No. 8:17-cv-802-T-24 MAP, 2017

WL 3149431, at *3 (M.D. Fla. July 25, 2017), where a federal district courts recognized that "under Florida law, a defamation plaintiff must plead the identity of the particular person to whom the remarks were made with a reasonable degree of certainty to afford the defendant enough information to determine affirmative defenses." (cleaned up).  Following this principle, *Ward* and other federal district courts have dismissed Florida common law defamation claims for failure to identify, with specificity, the exact recipients of the defamatory statements.  *Id.* (dismissing defamation claims against non-specified "law enforcement agencies" and other "entities and/or prospective employers"); *see also Aflalo v. Weiner*, No. 17-61923-CIV, 2018 WL 3235529, at *4 (S.D. Fla. July 2, 2018) (dismissing defamation claim where plaintiff failed to identify specific persons who read defamatory Facebook post); *Maritime Executive, LLC v. Larson Electronics, LLC*, No. 17-cv-60323, 2018 WL 2938376, at *4 (S.D. Fla. June 11, 2018) ("Because Maritime does not identify a single third-party who it contends accessed the alleged defamatory material within Florida, it has failed to state a cause of action for defamation ….").

The Court rejects this argument for two reasons.  First, the *Ward*, *Aflalo*, and *Maritime Executive* decisions each relied on an earlier Florida decision, *Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So. 2d 1025 (Fla. 3d DCA 1981).  In *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986), however, the Eleventh Circuit expressly considered the impact of *Buckner* on Florida common law defamation claims in federal court.  In that case, the district court dismissed a defamation claim for failure to allege publication with sufficient specificity, as per *Buckner*.  *Id.*  On appeal, the Eleventh Circuit reversed, reasoning that *Bucker's* requirement of strict pleading of publication could not override the more liberal pleading standards of Fed. R. Civ. P. 8(a).  *Id.*  As such, the Eleventh Circuit found the plaintiff's complaint sufficient to survive dismissal in federal court, despite its apparent inability to do so in state court, as per *Buckner*.  *Id.*

Other federal district courts have recognized that the Eleventh Circuit's decision in *Caster* forecloses strict application of *Buckner*. *See Grlpwr, LLC v. Rodriguez*, No. 3:23CV16480-TKW-HTC, 2023 WL 5666203, at *6 (N.D. Fla. Aug. 25, 2023) ("*Buckner* is not controlling here because the Eleventh Circuit has recognized that a federal court need not adhere to a state's strict pleading requirements and has held that Fed. R. Civ. P. 8 does not require a plaintiff to identify the specific persons to whom the statement was published.") (cleaned up); *Selinger v. Kimera Labs, Inc.*, No. 20-cv-24267, 2022 WL 34444, at *10 (S.D. Fla. Jan. 3, 2022) ("Obviously, *Maritime Executive* and *Aflalo* appear to conflict with *Caster*."). This Court likewise agrees that *Buckner* does not control the outcome here.

Second, even if the strict pleading requirements of *Buckner* applied here, the Court would find them satisfied. In the Court's view, *Buckner* does not require a plaintiff -- at the motion to dismiss stage -- to identify the names of persons who heard a given defamatory statement or the names of persons who read a given defamatory statement on the internet. The decision merely requires a pleading to "identify the particular person to whom the remarks were made *with a reasonable degree of certainty*." *Buckner*, 403 So. 2d at 1027 (emphasis added).

The Court finds the Complaint in this case identifies the audience of Defendants' defamatory statements with a reasonable degree of certainty. As to Defendants Hooper and Zassman, the Complaint alleges these Defendants made verbal defamatory statements to condominium residents, including those in buildings C, D, and N (DE 9 ¶¶ 26, 28-31). As to Defendant Flanick, the Complaint alleges she filed a police report containing numerous false statements about Plaintiff, with publication to Palm Beach County Deputy Sheriff Etienne, among others (DE 9 ¶¶ 45-46).

As to Defendant Colella, the Complaint alleges she published defamatory statements by way of the internet app "NextDoor" -- the same app Plaintiff used to communicate with residents regarding his proposed Condominium Owners Bill of Rights (DE 9 ¶ 34). Defendant Colella therefore intended her statements to reach the same audience as Plaintiff's original communication regarding his proposed legislation. The Court finds these allegations sufficient to identify the audience of Defendant Colella's defamation with a reasonable degree of certainty.

The Court has also considered, but finds unpersuasive, the numerous cases cited by Defendants dealing with Florida's long-arm statute, Fla. Stat. § 48.193 (DE 18 at 22-23).[3] In such cases, courts are frequently called upon to determine, inter alia, whether a given defendant committed "a tortious act within Florida" for purposes of establishing personal jurisdiction under § 48.193(1)(a)(2). In the context of defamation claims, such disputes frequently rise and fall on whether a plaintiff can prove that a given defamatory statement was communicated by or to a person *in the state of Florida*. To make this determination, courts employ a burden shifting analysis that frequently involves examination of affidavits and, if necessary, live witnesses to resolve conflicts in the affidavits. *See It's a 10, Incorporated v. Beauty Elite Group Incorporated*, No. 13-60154-CIV, 2013 WL 1636366, at *2 (S.D. Fla. Apr. 16, 2013) (explaining the burden shifting analysis under Florida's long arm statute) (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502-03 (Fla.1989)).

The Court finds Defendants' citation to these long-arm cases unpersuasive because the courts' analysis in such cases is fundamentally different from the analysis to be undertaken here. This case does not involve application of the long arm statute but instead involves application of

---

[3] *See, e.g.*, *Catalyst Pharm., Inc. v. Fullerton*, No. 16-25365-CIV, 2017 WL 6558397 (S.D. Fla. Aug. 8, 2017); *Mar. Executive, LLC*, 2018 WL 2938376; *Aflalo*, 2018 WL 3235529.

13

the Rule 12(b)(6) pleading standards to Florida common law claims of defamation and defamation per se. For all the reasons described here, the Court finds the pleading standards to be satisfied.

### 4. Police Report Statements

Finally, the Court rejects Defendant Flanick's argument that Plaintiff cannot state a plausible defamation claim against her based upon statements she made in police reports (DE 18 at 24-25). Specifically, Defendant Flanick argues the Complaint fails to identify the defamatory statements with sufficient specificity and also fails to allege how such statement caused injury to Plaintiff (DE 18 at 24-25).

The Court disagrees. The Complaint sufficiently identifies the defamatory statements at issue, i.e., that Defendant Flanick made statements in police reports to the effect that Plaintiff was not part of the Condo Association and, as such, had no business contacting residents in the building (DE 9 ¶ 45). Likewise, the Complaint sufficiently alleges damages, i.e., that Defendant Flanick used the false statements to seek a warrant for Plaintiff's arrest (DE 9 ¶¶ 16.d, 45). The Court finds these allegations sufficient to survive dismissal.

### C. Count 4 – Intentional Infliction of Emotional Distress

Finally, Count 4 alleges a claim for intentional infliction of emotional distress (DE 9 ¶¶ 48-57). Defendants move to dismiss this count on multiple grounds (DE 18 at 25-30). In response to the Motion, Plaintiff agrees to withdraw Count 4 (DE 21 at 17).

## IV. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 18) be **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Motion is **GRANTED** as to Count 1.

2. The Motion is **DENIED** as to Count 2.

3. The Motion is **DENIED** as to Count 3.

4. The Motion is **DENIED AS MOOT** as to Count 4.

Because Plaintiff may be able to cure these pleading deficiencies, the undersigned **RECOMMENDS** that Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE** with leave to file an Amended Complaint. **Pending the District Judge's resolution of this Report and Recommendation, Plaintiff may only file an Amended Complaint in full compliance with Fed. R. Civ. P. 15.**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 15th day of April, 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE